IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KENT JOHNSON, JOSHUA PETERSON, GRACE MITCHELL, KIMLY MANGUM, SCOTT KINGSTON, ERIC FREEMAN, DARREN JENKINS, DANIEL JESSOP, and BENJAMIN ROBINSON,<br><br>Plaintiffs,<br><br>v.<br><br>BRYAN BOWLES, CYNTHIA PHILLIPS, MICHELLE SMITH, KRYSTLE BASSETT, STEPHANIE SPEICHER, and ERIK OLSON, in their official capacities,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING REQUEST FOR *EX PARTE* TEMPORARY RESTRAINING ORDER**<br><br>Case No. 2:22-cv-573<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiffs, current board members of Vanguard Academy, a public charter school located in West Valley City, sue Defendants, members of Utah's State Charter School Board ("SCSB"). Plaintiffs sue Defendants in their official capacities, alleging violations of their First Amendment rights to freedom of association and religion and their due process rights under the Fourteenth Amendment. Plaintiffs move for an *ex parte* temporary restraining order and for a preliminary injunction. *See* Dkt. No. 3 at 3. Plaintiffs' request for an *ex parte* temporary restraining order is denied. The court reserves ruling on Plaintiffs' request for a preliminary injunction at this time.

I.

Vanguard Academy was founded in 2014. *See* Dkt. No. 2 ¶ 13. While Vanguard is a public, nonsectarian school, a majority of its students are from families that belong to the Latter Day Church of Christ. *See* Dkt. No. 2 ¶ 15. Since its founding, a majority of Vanguard's board

members have also been members of this church. *See id.* ¶ 16. Seven of Vanguard's current nine board members are also members of the Davis County Cooperative Society (DCCS) and the Latter Day Church of Christ. *See id.* ¶¶ 16, 18.

Under Utah law, the SCSB is responsible for authorizing charter schools, for "review[ing] and evaluat[ing] the performance of charter schools," and for "monitor[ing] charter schools . . . for compliance with federal and state laws, rules, and regulations." Utah Code § 53G-5-205(1)(a), (2). The SCSB is authorized to sanction schools for noncompliance with legal requirements and to take remedial action, including appointing interim school officials and replacing board members with individuals selected by the SCSB. *See* Utah Code § 53G-5-501(2). Of particular relevance here, under Utah Code § 53G-5-501, "[i]f a charter school is found to be out of compliance with the requirements of section 53G-5-404 or the school's charter agreement, the charter school authorizer shall notify" the charter school's board "that the charter school has a reasonable time to remedy the deficiency [and] [i]f the charter school does not remedy the deficiency within the established timeline, the authorizer may . . . remove a charter school governing board member." Utah Code § 53G-5-501(1)–(2).

On June 25, 2021, the SCSB sent the Vanguard board a warning letter, notifying Vanguard that it had identified twelve deficiencies in the school's governance and procurement practices. *See* Dkt. No. 2 ¶ 27. The asserted deficiencies included alleged violations of contracting requirements under Utah's Procurement Code. *See id.* Over the next year, SCSB and the Vanguard board engaged in an extensive back-and-forth related to the alleged deficiencies. *See* Dkt. No. 2 ¶¶ 29–50. Among other things, Vanguard board members and personnel met with SCSB staff to discuss SCSB's concerns, *see id.* ¶ 29, and Vanguard implemented new procurement processes, *see id.* ¶ 33. Vanguard developed a compliance corrective action plan,

which it provided to the SCSB in December 2021. *See id.* ¶ 31. In this plan, Vanguard represented that it "believed the actions identified therein could be completed by January 31, 2022" and would resolve all of the alleged deficiencies. *Id.* ¶ 32. Vanguard reported on its efforts to resolve the asserted deficiencies at a March 2022 SCSB meeting. *See id.* ¶ 35. And during a May 2022 SCSB meeting, SCSB approved Vanguard's application to amend its charter, resolving one of the alleged deficiencies. *See id.* ¶ 41. At that same meeting, SCSB identified deficiencies in Vanguard's Bylaws and encouraged Vanguard to amend its bylaws to correct these problems. *See id.* The same month, SCSB sent Vanguard an updated warning letter alleging that Vanguard's board had violated the Open Public Meetings Act (OPMA). *See id.* ¶ 43. Vanguard subsequently amended its bylaws and sent the SCSB a response letter detailing the steps the school had taken to resolve the remaining deficiencies. *See id.* ¶¶ 46, 48–49.

On August 22, 2022, SCSB held a three-and-a-half-hour special meeting to determine whether Vanguard had resolved all of the alleged deficiencies. *See id.* ¶¶ 51–74. SCSB staff presented a report concluding that Vanguard had failed to resolve four deficiencies and recommending that the state board place Vanguard Academy on probation, remove the entire Vanguard board, and replace the board with members selected by SCSB. *See* Video Recording of SCSB Meeting, August 22, 2022, https://www.youtube.com/watch?v=wbsqv6zs_0g&t=4114s, 36:30–1:14:44. SCSB staff concluded that the deficiencies relating to conflicts of interest had not been resolved because potential conflicts and appearances of favoritism toward some of Vanguard's vendors remained. *See id.* at 43:00–43:06, 44:28–53:58. SCSB staff also concluded that Vanguard had not meaningfully complied with the requirements of the Procurement Code for obtaining competitive bids for its food service contract because Vanguard ended the bid period on August 30, 2022, for meal service expected to begin on September 1, 2022. *See id.* at

56:00–56:30. SCSB staff believed it would be all but impossible for Vanguard to review proposals and transition to a vendor other than the incumbent within 36 hours. *See id.* at 56:31–57:40. As for the OPMA, SCSB staff concluded that Vanguard's violations were not merely technical. *See id.* at 57:41–59:50. The staff reported that of the eight Vanguard board meetings it had reviewed, half had lasted less than half-an-hour, indicating either that the Board was not providing meaningful oversight of contracts and other procurement decisions or that it was doing so outside of public meetings. *See id.* at 51:45–51:58, 57:41–59:50.

Members of Vanguard's board and their counsel were then provided an opportunity to present a detailed response to the staff report. *See id.* at 1:14:45–2:08:10. After Vanguard's response, SCSB members engaged in discussion with the Vanguard board, expressing concerns regarding potential conflicts of interest and the appearance of favoritism. *See id.* at 2:08:40–3:19:19. The SCSB then voted unanimously to adopt its staff's recommendations, including placing Vanguard on probation and replacing all current members of the Vanguard board effective September 8, 2022. *See id.* at 3:19:20–3:19:50; Dkt. No, 2 ¶ 54; Dkt. No. 3 at 4.

On September 6, 2022, Plaintiffs filed this action and moved for an *ex parte* temporary restraining order and a preliminary injunction to prevent their removal from Vanguard's board.

## II.

To obtain an *ex parte* temporary restraining order, Plaintiffs must meet the same standard as for a preliminary injunction. *See Miche Bag, LLC v. Thirty One Gifts LLC*, No. 2:10-CV-781 TS, 2010 WL 3629686, at *1 (D. Utah Sept. 13, 2010). Plaintiffs "must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the [temporary restraining order] is denied; (3) the threatened injury outweighs the harms that the [temporary restraining order] may cause the opposing party; and (4) the [temporary restraining order], if

4

issued, will not adversely affect the public interest." *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020); *see also Klein-Becker USA, LLC v. Product Quest Mfg., Inc.*, 429 F. Supp. 2d 1248, 1251 (D. Utah 2005).

Plaintiffs also must satisfy the requirements for obtaining an *ex parte* temporary restraining order contained in Federal Rule of Civil Procedure 65(b). Specifically, they must set forth "specific facts in an affidavit or verified complaint" that "clearly show that immediate and irreparable injury, loss, or damage will result to [them] before the adverse party can be heard in opposition," and their attorney must "certif[y] in writing any efforts made to give notice and the reasons why it should not be required." *Id.*

Even when notice has been provided to the non-moving party, interlocutory injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Because Plaintiffs seek *ex parte* relief, the court will apply this "clear showing" standard strictly, mindful of the Supreme Court's caution "that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

**III.**

The court first addresses Plaintiffs' contention that the SCSB's actions violate their due process rights. The court concludes that Plaintiffs have failed to show a substantial likelihood of success on the merits of this contention.

To the extent that Plaintiffs assert a violation of their procedural due process rights, the court notes that the Due Process Clause does not require that government decisionmakers reach

correct decisions. *See Abdulai v. Ashcroft*, 239 F.3d 542, 550 (3d Cir. 2001). Nor does it require perfect compliance with all substantive and procedural requirements imposed by state law. *See Guttman v. Khalsa*, 669 F.3d 1101, 1115 (10th Cir. 2012); *Hicks v. City of Watonga,* 942 F.2d 737, 746 n. 4 (10th Cir. 1991). Rather, the principal requirements of procedural due process are notice and and an opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). Here Plaintiffs were not only provided notice of the alleged deficiencies, they were provided an opportunity to cure these alleged deficiencies—for some of the alleged deficiencies an opportunity lasting more than a year. *See* Dkt. No. 2 ¶¶ 27, 41, 43. The SCSB also provided the Vanguard board multiple opportunities to be heard—not only in writing, but at three SCSB meetings, including a final three-and-a-half-hour hearing during which the Vanguard board was given the opportunity to respond to the SCSB staff report before the SCSB took the challenged action. *See id.* ¶ 35, 41, 49, 51; Dkt. No. 3 ¶ 29, 34. Having carefully reviewed the verified complaint and the video of the final SCSB hearing, the court concludes that Plaintiffs have failed to demonstrate a substantial likelihood of establishing that the procedures they were afforded were constitutionally inadequate.

To the extent Plaintiffs also assert a violation of their substantive due process rights, they must show that the SCSB's actions were "arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (cleaned up). This is a difficult standard to meet. As the Supreme Court has explained, "only the most egregious official conduct" rises to this level. *Id.* at 846. Where, as here, the challenged action is executive as opposed to legislative in character, "the threshold question is whether the behavior of the governmental officer[s] is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n.8. Plaintiffs thus "must do more than show that the government actor[s] intentionally or

recklessly caused injury to the plaintiff[s] by abusing or misusing government power." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). Rather, they must show that the SCSB's actions manifested "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* Conduct that "bears a 'reasonable justification in the service of a legitimate governmental objective'" is unlikely to rise to this level. *Browder v. City of Albuquerque*, 787 F.3d 1076, 1078–79 (10th Cir. 2015) (citation omitted); *see also Lewis*, 523 US. at 849 (explaining that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official conduct most likely to rise to the conscience-shocking level").

The court concludes that Plaintiffs have failed to show a substantial likelihood of establishing that the SCSB's actions were sufficiently egregious to meet this high standard. Regardless of whether the SCSB reached the correct decision, the evidence before the court clearly suggests that the SCSB's actions were intended to further the legitimate governmental objectives of ensuring the proper stewardship of public funds and the proper governance of a public school. Nor do the SCSB's actions—which are expressly contemplated by Utah law, *see* Utah Code § 53G-5-501(2)(a)(i)(B)—seem "so egregious, so outrageous, that [they] may fairly be said to shock the contemporary conscience."

## IV.

The court next addresses Plaintiffs' contention that the SCSB's actions violate their First Amendment rights. Plaintiffs offer very little in support of this contention—they cite no case law regarding the showing required to prevail on freedom of association or freedom of religion claims and offer little analysis. *See* Dkt. No 3 at 29, 32. The court concludes that they have failed to demonstrate a substantial likelihood of success on the merits with respect to this contention.

7

In identifying deficiencies in Vanguard's procurement practices and governance and in ultimately deciding to remove Vanguard's board for failure to cure these deficiencies, the SCSB appears to have relied on generally applicable laws. Plaintiffs offer no argument that Utah's laws governing procurement, conflicts of interest, open meetings, or the SCSB's oversight and remedial authorities are not neutral with respect to religion. And the Supreme Court has made clear that the First Amendment does not require States to exempt individuals from generally applicable laws based on their religious practices or beliefs. *See Employment Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 878 (1990).

To the extent Plaintiffs argue that the SCSB's proffered rationales were pretexts for religious discrimination, *see* Dkt. No 3 at 32, the court is unpersuaded. The SCSB raised concerns about Vanguard's compliance with procurement law, potential conflicts of interest, the appearance of bias or favoritism toward vendors, violations of open meeting laws, and inadequate transparency. *See* Video Recording of SCSB Meeting, August 22, 2022, 36:30–1:14:44; 2:08:40–3:19:19. Having carefully reviewed the verified complaint and the video of the August SCSB meeting, the court finds nothing that would warrant a conclusion that the concerns expressed by the SCSB were insincere and that its actions were instead motivated by the Plaintiffs' religious practices and beliefs.

To be sure, SCSB members and staff did express concern about their lack of insight into how the DCCS operates and whether Vanguard's selection of vendors owned by members of this organization created potential conflicts or at least the appearance of favoritism. *See, e.g.*, *id.* at 2:26:40–2:27:03; 2:27:40–2:27:50. But the court finds nothing in the evidence that Plaintiffs have identified so far that warrants a conclusion that these concerns were based on the DCCS's religious character rather than Vanguard's repeated contracts with vendors owned by DCCS

8

members. And given the lack of regulatory oversight of the DCCS as well as the limited and conflicting information available to the SCSB regarding the DCCS's operations, the court is not persuaded that the SCSB was required to take Plaintiffs word for how the DCCS operated without question or verification, or that its failure to do so evinces religious discrimination.

## V.

Finally, the court considers whether Plaintiffs have met the specific requirements imposed by Federal Rule of Civil Procedure 65(b) for obtaining an *ex parte* temporary restraining order. The court concludes that Plaintiffs have failed to "clearly show that immediate and irreparable injury, loss, or damage will result to [them] before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1).

Plaintiffs first assert that they will suffer irreparable constitutional injury if the court denies their motion. *See* Dkt. No. 3 at 26–28. But this argument assumes that their constitutional contentions are meritorious. And as discussed, Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of these contentions. Plaintiffs also assert that if they are replaced as members of its board, "Vanguard risks losing many of its employees and students," which will "forc[e] the school to close its doors." *See id.* at 4. But Plaintiffs have failed to identify any evidence that supports their naked assertion that this injury is likely to occur.[1]

In all events, Plaintiffs' asserted need to obtain relief before Defendants can be heard in opposition is largely of their own making. Plaintiffs waited two weeks after the SCSB decided to

---

[1] On the evening of September 7, 2022, Plaintiffs' counsel notified this court that the state court had orally issued a temporary restraining order barring the SCSB from removing Vanguard's board members in *Vanguard Academy v. Utah State Charter School Board*, Case No. 220905302 (Third District, Utah, August 30, 2022). *See* Dkt. No. 6. The state court's order likely forecloses Plaintiffs' ability to "clearly show that immediate and irreparable injury, loss, or damage will result to" to them if this court does not also grant a temporary restraining order "before the adverse party can be heard in opposition."

replace them and then filed this action and their request for a temporary restraining order just two days before the SCSB's decision was to be implemented. *See* Dkt. No. 2 at 2; Dkt. No. 3. Under these circumstances, the court concludes that Plaintiffs' delay weighs against the propriety of the eleventh-hour, *ex parte* relief they seek. *Cf. Oakland Trib., Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984).

\* \* \*

For all of these reasons, and based on the limited evidentiary record currently available to it, the court concludes that Plaintiffs have failed to make a clear showing that they are entitled to the extraordinary relief they seek. Plaintiffs' request for an *ex parte* temporary restraining order is accordingly DENIED.

IT IS SO ORDERED.

DATED this 8th day of September, 2022.
BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge